25 C.C.P.A.(Patents)

## ACKERMAN v. LIGHT.

### Patent Appeal No. 3929.

Court of Customs and Patent Appeals.

April 25, 1938.

George B. Pitts, of Cleveland, Ohio (Elmer Stewart, of Washington, D. C., of counsel), for appellant.

Parker Dodge, of Washington, D. C., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an interference proceeding wherein the Board of Appeals of the United States Patent Office affirmed a decision of the Examiner of Interferences which awarded priority of invention, as to all the counts in issue, to appellee.

The issue consists of six counts, of which counts 1, 2, and 3 are illustrative and read as follows:

"1. The herein disclosed process of cooling material in a container enclosed in a gas tight chamber, which consists in continuously supplying liquid refrigerant having a relatively low boiling point into said chamber above the container and causing downward flow of the refrigerant over the walls thereof and preventing formation of gas pockets on said walls while permitting the separation of gases from the liquid, discharging the unused liquid into a receiver, and conveying away the generated gases.

"2. In apparatus of the class described, the combination of a closed container, a casing surrounding said container in spaced relation thereto, a reservoir for liquid refrigerant below said casing, a discharge conduit leading from the lower portion of said casing to said reservoir, means for conveying liquid refrigerant from said reservoir to the space between said container and casing and discharging it onto the upper walls of said container, a pipe for supplying the liquid refrigerant to said reservoir, a valve in said pipe outside the walls of said reservoir, a float operated by the rise and fall of the refrigerant level in said reservoir, and operating connections between said float and said valve for operating the latter.

"3. The herein disclosed process of refrigerating material during agitation thereof in a container surrounded by a closed chamber having a discharge opening which consists in agitating the material and simultaneously supplying a liquid refrigerant having a relatively low boiling point into the upper portion of said chamber and circulating it under pressure over and in contact with the walls of the container and discharging the unused portion of the refrigerant through said opening and utilizing the circulation of the refrigerant to remove from the container walls gases generated by the transfer of heat from the material and simultaneously exhausting from the upper portion of the chamber the generated gases which become separated from the liquid refrigerant."

The interference involves a patent, No. 1,960,074, issued to appellant on May 22, 1934, upon an application filed September 28, 1931, and a reissue application of appellee, serial No. 734,698, filed July 11, 1934, for the reissue of patent No. 1,866,- 988, issued July 12, 1932, upon an application filed October 25, 1927.

The counts here in issue are claims of appellant's patent, copied by appellee and placed in his reissue application for interference purposes.

The specification and drawings of appellee's reissue application are identical with the specification and drawings of his patent.

As indicated by the above-quoted counts, the involved invention relates to an ice cream freezer, in which large batches of cream are frozen.

The Primary Examiner, in passing upon a motion made by appellant to dissolve the interference, described the disclosures of the respective parties as follows:

"The Ackerman patented application discloses the conventional horizontal type of ice cream freezer, but cooled by the direct expansion of a refrigerant. The refrigerant supply is float controlled and is taken up by a pump and sprayed through pipe 11 over the whole length of the freezer.. The liquid flows down over the freezer back to the reservoir 16. As it flows downward part of it is converted .into vapor by reason of heat absorbed from the cream mix which is thereby frozen. The refrigerant vapor is drawn off through pipe 65 back to the compressor. A small pipe 64 connects the upper part of the evaporator space 10 with the liquid holding reservoir in the base. The other structure shown is not involved in this controversy and hence need not be described.

"The party Light shows an ice cream freezer of the same type. The specific form covered by the counts of the interference is shown in Figures 6 and 7 but reference must be had to the other figures for certain details. The liquid refrigerant is admitted to reservoir 14 through valve 17 (Figure 2). From the reservoir 14 the liquid is drawn off by pump 20 and delivered to spray pipe 49' located in the jacket space above the freezer. As it flows downward it evaporates. In time the lower part of the jacket will become filled with liquid. The vapor passes off through pipe 40 [should read 50] back to reservoir 14 and from there it goes back through separator 48 and pipe 49 to the compressor. The excess liquid not evaporated in the jacket will also overflow through pipe 50. It is stated that 'the location of the overflow pipe 50 determines the depth to which it (the evaporator) is flooded and this may be arranged to suit particular conditions.' "

The interference was declared as of September 19, 1934, and preliminary statements were due on October 22, 1934.

Appellant filed no preliminary statement, and he, being the junior party, was, on December 5, 1934, put under an order to show cause why judgment upon the record should not be rendered against him.

Within the motion period, appellant moved to dissolve the interference upon the ground, among others, that appellee had no right to make claims corresponding to the counts in issue because the subject matter of each thereof is not disclosed in the original application of appellee.

Other grounds set out in said motion were estoppel of appellee to make the claims corresponding to the counts, and insufficiency of appellee's reissue application.

Appellee moved to add three additional counts, being claims copied from appellant's patent.

The Primary Examiner denied appellant's motion upon all grounds except with respect to the sufficiency of appellee's reissue oath, and upon this ground the motion was granted, subject, however, to the filing of a new oath by appellee, leave for which was granted. Such an oath was subsequently filed by appellee, the sufficiency of which was challenged by appellant; the Primary Examiner ruled that the oath was sufficient, and therefore denied appellant's motion to dissolve the interference upon the ground of insufficiency of the oath, so that, finally, appellant's motion to dissolve was denied upon all grounds urged by him.

The Primary Examiner also denied appellee's motion to add said three additional counts. Appellee appealed to the Board of Appeals from so much of the decision of the Primary Examiner as denied his motion to amend the interference by adding new counts. The Board of Appeals affirmed the decision of the Examiner upon this point.

After the above-mentioned proceedings were had, the Examiner of Interferences entered judgment upon the record against appellant, awarding priority of invention of the subject matter in issue to appellee.

Appellant appealed from said decision of the Examiner of Interferences, assigning as reasons for appeal the various matters set up in his motion to dissolve the interference, as well as other alleged errors upon the part of said examiner.

The Board of Appeals in its decision stated: "The party Ackerman has appealed on two grounds; first, that the counts do not read upon the disclosure of the party Light and, secondly, that Light is not entitled to a reissue containing the counts for various reasons. The question of the party Light's right to a reissue is purely an ex parte matter which has been decided favorably to him by the Primary Examiner and we shall therefore not consider it."

We are in agreement with this statement of the Board, which is in accordance

with the rule approved by us. Daley v. Trube, 88 F.2d 308, 24 C.C.P.A., Patents, 964; Bechtold v. Lanser, 82 F.2d 415, 23 C.C.P.A., Patents, 1051.

Upon oral argument before us, appellant's counsel expressly waived any contention with respect to the sufficiency of the oath in appellee's reissue application.

■ Appellant also contends that appellee is not entitled to a reissue patent because of intervening rights. That such an issue is not ancillary to the issue of an award of priority, and may not be raised in an interference proceeding, is well established. Norling v. Hayes, 37 App.D.C. 169; Earles et al. v. Gomber, 50 App.D.C. 389, 273 F. 353.

Appellant further contends that appellee is estopped to claim the subject matter of the counts in issue for the reason that appellee cancelled certain claims in his original application which, appellant insists, were of the same scope as the counts here in issue.

Assuming, without deciding, that this question raised by appellant is ancillary to an award of priority of invention, we agree with the Primary Examiner that no estoppel exists, such as appellant urges, for the reason that said canceled claims were broader in scope and radically different from the counts here involved.

But one question remains for consideration, and that is as to appellee's right to make the claims corresponding to the counts here in issue.

Appellant's brief states: "The counts having originated in Ackerman's patent and Light having copied them, for interference purposes, they must be interpreted according to the Ackerman disclosure."

■ Among the cases cited in support of the foregoing proposition is the case of Field v. Stow, 49 F.2d 840, 18 C.C.P.A., Patents, 1437. That case, however, holds that only where the element of a count is ambiguous may the patent in which the count originated be resorted to for the purpose of interpretation of such element. In the case of Writer v. Kiwad, 63 F.2d 259, 262, 20 C.C.P.A., Patents, 869, we said: "In interference cases, if the counts are not ambiguous, they should be given the broadest interpretation which they will reasonably support, and a party who deliberately elects to claim his invention broadly is not in a position to insist that limitations be read into them for the purpose of avoiding the issue of priority. [Citing cases.]"

The counts here involved are broadly drawn. The record shows that appellee's motion to add counts to the interference was denied because such counts, copied from appellant's patent, contained limitations that are not disclosed in appellee's patent or reissue application.

■ It is our opinion that the method counts read upon appellee's disclosure, unless it should be held that the counts require that every part of the walls of the gas-tight chamber be subject to the downward flow of the refrigerant during the entire process of cooling the material.

In appellee's disclosure, during the initial stages of the process, this occurs, but, as the operation proceeds, liquid is accumulated in the lower part of the gas-tight chamber to a point where it meets a pipe termed an "overflow" pipe, which prevents any further accumulation of liquid in the gas-tight chamber.

With relation to this overflow pipe, appellee's specification states: " * * * The location of the overflow pipe 50 determines the depth to which it is flooded, and this may be arranged to suit particular conditions."

According to appellee's drawings and specification, there is a continuous downward flow of refrigerant upon every part of the walls of the gas-tight chamber during the first part of the cooling operation, and there is such flow throughout the operation upon at least the walls of the upper half of the gas-tight chamber.

With respect to the removal from the container walls of generated gas, the Board held that this was necessarily inherent in Light's operation. We are in agreement with this conclusion.

With respect to the simultaneous exhaustion of gases from the upper part of the chamber with the discharge of the unused portion of the liquid refrigerant, this is clearly disclosed by appellee, although not in the same manner as that disclosed in appellant's patent. Appellant provides a separate pipe in the upper part of the chamber for the removal of the generated gases, while in appellee's method such gases are removed through the overflow pipe, the same pipe that removes the liquid after a certain amount has accumulated in the chamber.

308

The Board of Appeals in its decision stated:

"In Light, the gases and liquid pass out together through a pipe substantially at the middle of the chamber and the party Ackerman argues in effect that these claims should be regarded as limited to the complete separation of the gas from the liquid while in the chamber by exhausting the gas from the upper portion of the chamber through a separate passage from that through which the liquid is discharged.

"We are unable to agree with appellant's view. There is no question but that the portion of the counts under consideration clearly reads upon the Light disclosure and although Ackerman may have intended these claims to be more restricted, we think that they are not ambiguous and therefore that there is no necessity for limiting them to the Ackerman operation in order to avoid a forced interpretation.

"As to the removal of the generated gas from the walls of the chamber, while this is not described by Light, we think that it is necessarily inherent in his operation.

"Counts 1 and 2 are not as specifically limited and we believe that they fairly read upon the Light disclosure."

While appellant insists that his invention is clearly distinguished from that disclosed by Light, in that in appellant's process no liquid is permitted to remain in the chamber, we think that the counts are sufficiently broad to read upon the disclosures of both of the parties. It does not seem to us that one could avoid infringing the claims of appellant's patent, here in interference, by permitting some of the liquid refrigerant to remain in the bottom of the chamber.

 Count 2 embraces an apparatus. It seems to be conceded that appellee discloses all of the elements of this count, other than the element reading "a discharge conduit leading from the lower portion of said casing to said reservoir."

The Board of Appeals did not specifically discuss this element, but the Primary Examiner, in passing upon the motion to dissolve the interference, held that, count 2 being for an apparatus, it was permissible to read this element upon a drain pipe disclosed by appellee, numbered 51 in his drawings. This pipe, however, is controlled by a valve which is not normally open during the cooling operation. It is, however, a discharge conduit leading from the lower portion of the casing to his reservoir, and its purpose is to discharge the liquid from the casing into the reservoir. This being an apparatus claim, and there being no ambiguity in the description of the element under consideration, we do not think it permissible to construe the element as embracing only a pipe continuously open during the cooling operation. This limitation might have been made by appellant; but, not having done so, he may not now read such a limitation into this apparatus count.

While we are of the opinion that appellant's process and structure differ from those of appellee in many particulars, we think the counts here in issue are so broad as to embrace common subject matter disclosed in appellee's reissue application and appellant's patent.

The decision of the Board of Appeals is affirmed.

Affirmed.